IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| CURTIS LEE MORRISON, | ) | No. C 11-1896 LHK (PR) |
| | ) | |
| Plaintiff, | ) | ORDER GRANTING |
| | ) | DEFENDANTS' MOTION TO |
| v. | ) | DISMISS; DENYING |
| | ) | PLAINTIFF'S MOTION FOR |
| MARK PETERSON, | ) | SUMMARY JUDGMENT; |
| | ) | DENYING MOTION FOR |
| Defendant. | ) | APPOINTMENT OF COUNSEL |
| | ) | |

Plaintiff, a California state prisoner proceeding pro se, filed a second amended civil rights complaint ("SAC") pursuant to 42 U.S.C. § 1983.  In his SAC, Plaintiff alleges that California Penal Code § 1405, the California statute regarding the use of post-conviction DNA, violated his right to due process.  Defendant moved to dismiss and filed requests for judicial notice.  Plaintiff filed a motion for summary judgment, and an opposition to Defendant's motion to dismiss.  Defendant filed a reply, a supplemental reply, and an opposition to Plaintiff's motion for summary judgment.  Plaintiff then filed an opposition and amended opposition to Defendant's motion to dismiss, and Defendant filed a second supplemental reply.  Plaintiff has also filed a request for judicial notice and motion for appointment of counsel.  Having carefully considered all the papers submitted, the Court hereby GRANTS Defendant's motion to dismiss,

and DENIES Plaintiff's motion for summary judgment and appointment of counsel.[1]

## BACKGROUND

The following background is based on the allegations in the complaint, the judicially noticed state court records, and Plaintiff's federal writ of habeas corpus.

On April 21, 1973, Morrison and his nephew were driving on Highway Four in a pickup truck when the drive shaft of the truck broke and the vehicle coasted to a stop. While his nephew left to get help, Morrison tried to remove the truck's U-bolts in preparation for installing a new drive shaft. Martinez Police Officer Thomas Tarantino stopped by the side of the highway to see if Morrison needed help.

Several witnesses testified as to what happened after Officer Tarantino stopped to help Morrison. After an initial conversation, Officer Tarantino frisked Morrison. The two men were next seen wrestling on the ground, after which Morrison threw Officer Tarantino onto the highway. Sylvia Young testified that she saw Morrison holding what appeared to be a police service revolver. Cheryl Balsdon testified that Morrison waived a gun in the air and pointed it at the officer's head. William Boydston saw the officer and Morrison struggling, heard three shots, and saw the officer fall. This witness saw the officer stand and further struggle with Morrison until the officer fell again. Boydston heard one more shot.

Officer Tarantino died at the hospital from gunshot wounds to his head and stomach. The officer's revolver was found on a hillside at the scene. The revolver contained two unfired bullets and four cartridge cases.

Morrison's driver's license was found in the officer's uniform shirt

---

[1] A court may take judicial notice of court filings and other matters of public record. *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006). Here, Defendant has requested judicial notice of court documents relating to Plaintiff's state conviction and related post-conviction proceedings. Accordingly, Defendant's request for judicial notice is GRANTED. However, a court may not take judicial notice of the veracity of any arguments or facts presented in the documents subject to judicial notice. *See Wyatt v. Terhune*, 315 F.3d 1108, 1114 n.5 (9th Cir. 2003) (factual findings in one case ordinarily are not admissible for their truth in another case through judicial notice); *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001) (a court may take judicial notice of another court's opinion, but not of the truth of the facts recited therein). Here, Plaintiff has requested judicial notice of "the evidence that support [sic] this motion for summary judgment that will allow DNA testing of crime scene evidence," even though Plaintiff does not specify of what evidence he speaks and concedes that some of the evidence "have never been before a judge or jury." (Pl. MSJ at 2.) Because Rule 201(b) does not permit judicial notice of this kind, Plaintiff's request is DENIED. *See* Fed. R. Civ. P. 201(b) ("The court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.").

pocket, and Morrison's .22 caliber gun was found in the officer's right front pants pocket.  Officer Tarantino had a habit of putting the license of a person in custody in his shirt pocket and of putting any evidence taken by him in his right front pants pocket.  Morrison was an ex-felon on parole.

*Morrison v. Estelle*, 981 F.2d 425, 426-27 (9th Cir. 1992).[2]

Plaintiff's defense was that "two black dudes on motorcycles stopped," got into an argument with the officer, and shot the officer.  (Req. Judicial Notice, Ex. I at 13-14.)  Plaintiff claimed that he was underneath his truck when Officer Tarantino stopped.  (*Id.* at 13.)  As Officer Tarantino began to leave, two men arrived on motorcycles asking for directions.  (*Id.*)  The men argued over the directions, and Officer Tarantino asked them to step over the truck.  (*Id.*)  At that time, the men engaged in a fight with Officer Tarantino.  (*Id.*)  As Plaintiff began to come out from underneath his truck, he heard gunshots, and the two men fled on their motorcycles.  (*Id.* at 13-14.)  Officer Tarantino was in the middle of the road, and Plaintiff attempted to drag him from the roadway and flag down a passing car.  (*Id.* at 14.)  Another police officer arrived soon thereafter.  (*Id.*)

On March 11, 1974, Plaintiff was convicted of first-degree murder and related offenses.  (Req. Judicial Notice, Ex. N.)  He was sentenced to seven years to life on the murder conviction, and the remaining sentences were stayed.  *See Morrison*, 981 F.2d at 427.  The California Court of Appeal affirmed.  *Id.*  The California Supreme Court denied his state petition for writ of habeas corpus.  *Id.*  The federal district court denied Plaintiff's federal writ of habeas corpus, and the Ninth Circuit affirmed.  *Id.*

In April 2006, Plaintiff requested appointment of counsel in Superior Court for the purpose of preparing a motion for DNA testing, pursuant to California Penal Code § 1405.  (Req. Judicial Notice, Ex. A at 2.)  The Superior Court appointed counsel, and the parties briefed the motion.  (*Id.*, Exs. A-E.)  Plaintiff requested DNA testing on five particular items of evidence.  (*Id.*, Exs. C at 49, G.)  On June 30, 2008, the Superior Court held a hearing, and ultimately

---

[2]    After his conviction, in June 2008, Plaintiff obtained an affidavit from an individual named Perry Thompson, who declared that the .22 caliber gun belonged to him, it had been stolen, and he did not know Plaintiff.  (Req. Judicial Notice, Ex. E at 2.)

Order Granting Defendant's Motion to Dismiss; Denying Plaintiff's Motion for Summary Judgment; Denying Motion for Appointment of Counsel
G:\PRO-SE\SJ.LHK\CR.11\Morrison896mtd.wpd

3

1  denied the motion, concluding that Plaintiff had failed to meet his burden under Section 1405.

2  (*Id.,* Exs. F, G.)  Specifically, the Superior Court concluded that, in light of all the evidence, the

3  DNA results would not raise a reasonable probability that the Plaintiff's verdict or sentence

4  would have been more favorable had the results of the DNA testing been available at the time of

5  conviction.  (*Id.*, Ex. G at 31.)  *See* Cal. Penal Code § 1405(f)(5).  Plaintiff filed a petition for

6  writ of mandate in the California Court of Appeal, which was denied on December 16, 2008.

7  (*Id.*, Ex. J.)

8          On September 29, 2010, Plaintiff filed a second motion to release DNA.  (*Id.*, Ex. K.)  In

9  the motion, Plaintiff sought DNA testing of six items, some of which had been previously

10  requested and denied.  (*Id.*)  The Superior Court denied Plaintiff's motion, concluding that

11  Plaintiff had not met his burden of demonstrating that the evidence he sought to be tested was

12  material to the issue of whether Plaintiff was the person who perpetrated the crime.  (*Id.*, Ex. L at

13  2.)  *See* Cal. Penal Code § 1405(f)(4).

14          In the instant matter, Plaintiff requests DNA testing on the evidence requested in his first

15  motion for DNA testing, as well as "all other evidence used in the trial that was said to once be

16  in Plaintiff's control and possession."  (SAC at 4.)  Plaintiff claims that Defendant's failure to

17  test and release these items violates his right to due process.

18                                              **ANALYSIS**

19          In his motion to dismiss, Defendant argues that Plaintiff's allegations do not state a

20  cognizable claim for relief under Section 1983 because the refusal to submit the items for DNA

21  testing did not violate his constitutional rights.

22  I.      Standard of Review

23          Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of a

24  complaint that fails to state a claim upon which relief may be granted.  Review is limited to the

25  contents of the complaint, *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir.

26  1994), and judicially noticed facts that are not in dispute, *Lee v. County of Los Angeles*, 250 F.3d

27  668, 688 (9th Cir. 2001).  Allegations of fact in the complaint are taken as true and construed in

28
Order Granting Defendant's Motion to Dismiss; Denying Plaintiff's Motion for Summary Judgment; Denying
Motion for Appointment of Counsel
G:\PRO-SE\SJ.LHK\CR.11\Morrison896mtd.wpd

1    the light most favorable to the non-moving party, *Spreewell v. Golden State Warriors*, 266 F.3d

2    979, 988 (9th Cir. 2001), and pro se pleadings are construed liberally, *Ortez v. Washington*

3    *County Oregon*, 88 F.3d 804, 807 (9th Cir. 1996). To state a claim under Section 1983, a

4    plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws

5    of the United States was violated, and (2) that the alleged deprivation was committed by a person

6    acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

7    II.    Plaintiff's Claim

8         Plaintiff claims that Defendant violated his right to due process by denying him access to

9    evidence for DNA testing. To the extent Plaintiff alleges a substantive due process claim, that

10   claim is foreclosed by *District Attorney's Office For The Third Jud. Dist. v. Osborne*, 557 U.S.

11   52, 67-74 (2009). In that case, the Supreme Court held that there was no free-standing federal

12   constitutional right to obtain post-conviction access to the state's evidence for DNA testing. *Id.*

13   at 72 (rejecting prisoner's attempt to seek post-conviction DNA testing that might prove his

14   innocence). In other words, a prisoner has no substantive due process right to obtaining DNA

15   evidence after his conviction.[3] *Id.* at 72-74.

16        Because Plaintiff has no substantive due process claim, this Court must analyze his claim

17   as one of procedural due process. A person claiming a due process violation with regard to

18   post-conviction DNA testing must show that he has a protected liberty interest created by the

19

20        [3] To the extent Plaintiff wishes to raise a claim of innocence that relied upon DNA
21   evidence, state law required him to do so by first seeking DNA testing by filing a motion under
     Section 1405, which is what Plaintiff did. Although Plaintiff's efforts to obtain the evidence
22   were ultimately rejected by the state courts, he was able to pursue his claims in the state courts
     via California's procedures doing so. These procedures, moreover, were constitutionally
23   adequate, as discussed below. In addition, it is not at all clear that a claim of actual innocence is
     cognizable in federal court. *Osborne*, 557 U.S. at 71-72. Even assuming it is, there are federal
24   discovery rules that would allow a petitioner, such as Plaintiff, to obtain DNA testing in order to
     prove his actual innocence claim via a federal habeas petition. *See id.* at 72 (citing Rule 6 of the
25   Rules Governing Section 2254 Cases). Indeed, in 2010, it appears that Petitioner filed an
     application for a second or successive federal habeas petition in the Ninth Circuit challenging the
26   Superior Court's denial of his motion for post-conviction DNA testing. *Morrison v. Carey*, No.
     10-70598 (9th Cir. filed Feb. 26, 2010). That application was denied on May 20, 2010. *Id.*
27

28
Order Granting Defendant's Motion to Dismiss; Denying Plaintiff's Motion for Summary Judgment; Denying
Motion for Appointment of Counsel
G:\PRO-SE\SJ.LHK\CR.11\Morrison896mtd.wpd
                                              5

laws of his state "to prove his innocence even after a fair trial has proved otherwise." *Id.* at 67.
If he makes such a showing, he must then show that the state's procedure for obtaining DNA
evidence is constitutionally inadequate because it "'offends some principle of justice so rooted in
the traditions and conscience of our people as to be ranked as fundamental,' or 'transgresses any
recognized principle of fundamental fairness in operation.'" *Id.* at 69 (quoting *Medina v.
California*, 505 U.S. 437, 446, 448 (1992)).  Because a convicted prisoner has a lesser liberty
interest than a criminal defendant who had not yet been convicted, the state correspondingly has
more flexibility in deciding what procedural protections to afford in the context of
post-conviction relief than in the context of a criminal trial. *Id.* at 69.

In *Osborne*, the Court found that the plaintiff, a prisoner under judgment of the State of
Alaska, had a liberty interest in demonstrating his innocence with new evidence under Alaska
state law (thus satisfying the requirement that there be a protected liberty interest), but did not
show that the Alaska state procedural protections attendant to that liberty interest were
constitutionally inadequate. *Id.* at 68.  Alaska law had provided a substantive right to be released
on a compelling showing of new evidence establishing innocence. *Id.* at 70.  It also exempted
those claims from statutory time limits and allowed for discovery including access to DNA
evidence upon certain conditions. *Id.*  Alaska also may have provided an additional right of
access to DNA evidence using a three-part test for those who could not obtain relief under the
general post-conviction procedures. *Id.*  The Supreme Court found that Alaska used procedures
similar to other jurisdictions' procedures for requesting DNA testing, and that Alaska's
procedures were "not inconsistent with the "traditions and conscience of our people" or with
"any recognized principle of fundamental fairness." *Id.* (internal quotations omitted).  Because it
was the burden of the person seeking DNA evidence "to demonstrate the inadequacy of the
state-law procedures available to him in state post-conviction relief," and Osborne had not done
so, he had not shown a procedural due process violation. *Id.* at 70-71.

Under *Osborne*, in order to show that the denial of his request for post-conviction DNA
testing caused a procedural due process violation, Plaintiff must show (1) the existence of a

Order Granting Defendant's Motion to Dismiss; Denying Plaintiff's Motion for Summary Judgment; Denying
Motion for Appointment of Counsel
G:\PRO-SE\SJ.LHK\CR.11\Morrison896mtd.wpd

protected liberty interest and (2) that California's procedures for protecting that interest violate a fundamental principle of justice or are fundamentally unfair. *See id.* at 67-69. "Federal courts may upset a State's postconviction relief procedures only if they are fundamentally inadequate to vindicate the substantive rights provided." *Id.* at 69.

It would appear that California state law provides a liberty interest comparable to that in Alaska to post-conviction release upon a compelling showing of actual innocence based on newly discovered DNA evidence. *See* Cal. Penal Code § 1485 (providing for discharge from custody upon petition for writ of habeas corpus when there is no legal cause for petitioner's imprisonment or restraint); *In re Weber*, 11 Cal.3d 703, 724 (Cal. 1974) (newly discovered evidence does not warrant relief "unless (1) the new evidence is conclusive, and (2) it points unerringly to innocence"). Even assuming that Plaintiff has a protected liberty interest in obtaining the evidence for DNA testing, however, Plaintiff's due process claim fails at the second part of the *Osborne* analysis.

In order for California's post-conviction procedure for obtaining DNA evidence, under Section 1405 of the California Penal Code, to violate due process it must "'offend[] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental,' or 'transgress[] any recognized principle of fundamental fairness in operation.'" *Osborne*, 129 S. Ct. at 2320 (citation omitted). It does not. Section 1405 provides an elaborate scheme under which a person in prison may seek and obtain DNA testing of evidence. Section 1405(a) provides for a written motion to be made by a person seeking performance of DNA testing; Section 1405(b) provides for the appointment of counsel to assist an indigent movant; Section 1405(c)(1) sets forth the particular showing that the movant must make; Section 1405(c)(2) provides for notice to the prosecutorial authority and an opportunity to be heard; Section 1405(d) allows disclosure of results from tests already performed; Section 1405(e) allows for a hearing on the motion; Section 1405(f) provides criteria under which the court "shall grant the motion for DNA testing"; Section 1405(g)(1) provides that, if testing is allowed, the court "shall identify the specific evidence to be tested and the DNA technology to be used";

Order Granting Defendant's Motion to Dismiss; Denying Plaintiff's Motion for Summary Judgment; Denying Motion for Appointment of Counsel
G:\PRO-SE\SJ.LHK\CR.11\Morrison896mtd.wpd

7

1   Section 1405(g)(2) describes a procedure for selecting the laboratory at which testing will be

2   done; Section 1405(h) describes how costs will be allocated and allows for costs not to be

3   allocated to an indigent inmate; Section 1405(j) provides for judicial review by petition for writ

4   of mandate or prohibition; Section 1405(k) provides for testing "as soon as practicable" unless

5   the Court orders it expedited; and Section 1405(m) provides that the right to file such a motion is

6   absolute and not waivable.

7            Indeed, California provides more generous procedural protections than the Alaska

8   scheme that was found to satisfy due process in *Osborne*.  In California, unlike Alaska, an

9   applicant for post-conviction DNA testing need not show the evidence to be tested is "newly

10  available" or has been "diligently pursued."  *See Osborne*, 557 U.S. at 70.  In addition,

11  California provides court-appointed counsel to an indigent applicant, Cal. Penal Code § 1405(b);

12  the state bears the cost of DNA testing if the prisoner is indigent, Cal. Penal Code § 1405(i); writ

13  relief is available in the appellate courts if the DNA testing motion is denied, Cal. Penal Code §

14  1405(j); and law enforcement is required to retain and preserve biological evidence in cases that

15  may involve future post-conviction DNA testing, Cal. Penal Code § 1417.9.  Alaska's

16  procedures for obtaining post-conviction DNA testing, which were still developing at the time of

17  the Supreme Court ruling, did not include these protections.  *See Osborne*, 557 U.S. at 70-71.

18           In light of the above, there is no indication that consideration of Plaintiff's claim pursuant

19  to Section 1405 offended some fundamental principle of justice or was fundamentally unfair so

20  as to violate due process.  *Accord Turner v. Dumanis*, No. 09-55524, 2011 WL 666686, at **1

21  (9th Cir. Feb. 24, 2011) (unpublished memorandum disposition) (affirming district court's

22  dismissal of claims that prisoner was denied post-conviction access to DNA testing because it

23  failed to state a viable due process claim); *Jackson v. Cooley*, No. 07-55806, 2009 WL 3249831,

24  at **1 (9th Cir. Oct. 7, 2009) (unpublished memorandum disposition) (same); *Faris v. Brown*,

25  No. 09-5396 WHA, 2010 WL 3743655, at *4 (N.D. Cal. Sept. 17, 2010) (comparing post-

26  conviction DNA statutes of California and Alaska, and concluding that there was no showing of

27  fundamental unfairness); *Soderstrom v. Orange County District Attorney*, No. SACV 08-00309

28

Order Granting Defendant's Motion to Dismiss; Denying Plaintiff's Motion for Summary Judgment; Denying
Motion for Appointment of Counsel
G:\PRO-SE\SJ.LHK\CR.11\Morrison896mtd.wpd

1  PA (SS), 2009 WL 3805647, at *5-6 (C.D. Cal. Nov. 12, 2009) (holding that California's

2  procedures, as in *Osborne*, are entirely adequate to satisfy due process).  Moreover, Plaintiff has

3  not alleged, nor is there any indication in the state court records, that consideration of his motion

4  for DNA testing deviated from the elaborate procedural scheme of Section 1405, or that he was

5  not afforded any of its numerous procedural protections.  As a result, the alleged facts, when

6  liberally construed and viewed in a light most favorable to Plaintiff, do not state a claim that

7  Plaintiff's post-conviction request for evidence for DNA testing violated his right to due process.

8        Plaintiff attempts to clarify his claim by stating that he is not actually raising a facial

9  constitutional challenge to California Penal Code § 1405.  (Am. Opp. Mtn. Dismiss at 2.)

10  Rather, Plaintiff alleges that he is challenging Section 1405 "as applied to this Plaintiff and or

11  construed in this case by the California Courts as to Plaintiff's how's and why's Section 1405

12  failed Plaintiff is because no where in Section 1405 does it take into account eye witness

13  testimony that is contradicted by physical evidence and undisputed documents, submitted that

14  will support Plaintiff's claims for the need for DNA testimony on the evidence used at trial."

15  (*Id.*) (Errors in original.)

16        In this regard, however, despite Plaintiff's statements to the contrary, he is seeking

17  review of the state court rulings denying his requests for DNA evidence.  Plaintiff's pleadings

18  focus on contradictions between eyewitness testimonies and other evidence.  However, Plaintiff

19  is not permitted to raise such claims in this federal civil rights action.  *Compare Skinner v.*

20  *Switzer*, 131 S.Ct. 1289, 1298 (2011) ("Skinner does not challenge adverse [state court]

21  decisions themselves; instead he targets as unconstitutional the Texas statute they authoritatively

22  construed. . . .  [A] state-court decision is not reviewable by lower federal courts, but a statute or

23  rule governing the decision may be challenged in a federal action.") *with Cooper v. Ramos*, 704

24  F.3d 772, 780-81 (9th Cir. 2012) (recognizing that plaintiff's complaint challenging the state

25  court's application of Section 1405 to him, in essence, was explicitly and improperly attacking

26  the Superior Court's judgment); *Alford v. Shasta County Super. Ct.*, No. CIV S-11-2583 WBS

27  GGH, 2012 WL 671941, at *2 (E.D. Cal. Feb. 29, 2012) (plaintiff's complaint failed to state a

28

Order Granting Defendant's Motion to Dismiss; Denying Plaintiff's Motion for Summary Judgment; Denying
Motion for Appointment of Counsel
G:\PRO-SE\SJ.LHK\CR.11\Morrison896mtd.wpd

1   cognizable claim because he did not challenge the constitutionality of California's DNA statute,

2   and instead challenged the state court rulings against him); *Soderstrom*, 2009 WL 3805647 at

3   *5-6 (plaintiff's complaint failed to state a cognizable claim because the procedures established

4   by California under Section 1405 were entirely adequate to vindicate plaintiff's state-liberty

5   interest in accessing DNA testing, and plaintiff failed to allege any special circumstances that

6   rendered the state's procedures inadequate with respect to him).  As a result, the allegations,

7   when liberally construed and viewed in a light most favorable to Plaintiff, do not state a claim

8   that Defendant violated his constitutional right to due process by denying his post-conviction

9   request for access to evidence for DNA testing

10         Furthermore, Plaintiff's assertion that the statute does not permit consideration of

11  contradictory evidence is incorrect.  Notwithstanding Plaintiff's failure to specify exactly what

12  evidence the Superior Court failed to take into account, in Plaintiff's post-conviction motions

13  and supporting papers, Plaintiff proffered "new" evidence, and emphasized contradictions

14  between eyewitnesses' testimonies and physical evidence.  (Req. Judicial Notice, Exs. C, K.)  In

15  addition, Section 1405 explicitly permits the court to consider, in its discretion, any evidence

16  whether or not it was introduced at trial. Cal. Penal Code § 1405(f)(5).  Here, there is no

17  indication that the Superior Court failed to consider this evidence.  (*Id.*, Exs. F, L.)  The record

18  supports the conclusion that the Superior Court denied Plaintiff's Section 1405 motion not

19  because it interpreted the statute to mean that it was prohibited from considering contradictory

20  evidence or "undisputed" documents, but because Plaintiff failed to produce evidence sufficient

21  to meet his burden as set forth in Section 1405.  *See Cooper*, 704 F.3d at 780-81 (recognizing the

22  difference between the claim as alleged in *Skinner*, "where the prisoner asserted that the Texas

23  statute was constitutionally inadequate as to *any* prisoner who failed to seek DNA testing before

24  trial," with the claim alleged by prisoner who was, in essence, challenging state court ruling)

25  (emphasis in original).

26                              **CONCLUSION**

27         Defendant's motion to dismiss is GRANTED.  Plaintiff's motion for summary judgment

28
Order Granting Defendant's Motion to Dismiss; Denying Plaintiff's Motion for Summary Judgment; Denying
Motion for Appointment of Counsel
G:\PRO-SE\SJ.LHK\CR.11\Morrison896mtd.wpd

is DENIED as moot.  Defendant's requests for judicial notice are GRANTED.  Plaintiff's request for judicial notice is DENIED.  Plaintiff's motion for appointment of counsel is DENIED as moot.  The clerk shall enter judgment, close the file, and terminate any pending motions.

IT IS SO ORDERED.

DATED: __3/11/13__

_____
LUCY H. KOH
United States District Judge

Order Granting Defendant's Motion to Dismiss; Denying Plaintiff's Motion for Summary Judgment; Denying Motion for Appointment of Counsel
G:\PRO-SE\SJ.LHK\CR.11\Morrison896mtd.wpd     11